# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# AUGUSTA DIVISION

| | |
|---|---|
| DESIREE DOUGLAS, Individually and for Others Similarly Situated<br><br>v.<br><br>AU HEALTH SYSTEM, INC. | Case No. _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Pursuant to 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Desire Douglas (Douglas) brings this collective action to recover unpaid overtime and other damages from AU Health System, Inc. (AU Health).

2. Douglas worked for AU Health as a Patient Care Technician (PCT) in Augusta, Georgia.

3. Like the Putative Class Members (as defined below), Douglas regularly worked more than 40 hours in a week.

4. But AU Health did not pay Douglas and the Putative Class Members for all the hours they worked.

5. Instead, AU Health automatically deducted 30 minutes a day from Douglas's and the Putative Class Members' work time for so-called "meal breaks."

6. Douglas and the Putative Class Members are thus not paid for that time.

7. But AU Health fails to provide Douglas and the Putative Class Members with *bona fide* meal breaks.

8. And Douglas and the Putative Class Members do not actually receive *bona fide* meal breaks.

9. Instead, AU Health requires Douglas and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and AU Health continuously subjects them to work interruptions during their unpaid "meal breaks."

10. AU Health's auto-deduction policy violates the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA) by depriving Douglas and the Putative Class Members of overtime pay for all overtime hours worked.

## JURISDICTION & VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12. This Court has general personal jurisdiction over AU Health because AU Health is a domestic corporation.

13. Venue is proper because AU Health maintains its headquarters in Augusta, Georgia, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

14. Douglas worked for AU Health as a PCT in Augusta, Georgia from approximately January 2022 until April 2022.

15. Throughout her employment, AU Health classified Douglas as non-exempt and paid her on an hourly basis.

16. Throughout her employment, AU Health subjected Douglas to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

17. But throughout her employment, AU Health failed to provide, and Douglas did not actually receive, *bona fide* meal breaks.

18. Douglas's written consent is attached as **Exhibit 1**.

19. Douglas brings this action on behalf of herself and other similarly situated hourly, non-exempt AU Health patient care employees who were subject to AU Health's automatic meal break deduction policy.

20. AU Health automatically deducts 30 minutes a day from these patient care employees' recorded work time for so-called "meal breaks."

21. But AU Health uniformly fails to provide, and these patient care employees do not actually receive, *bona fide* meal breaks.

22. Instead, AU Health uniformly requires these patient care employees to remain on-duty and perform compensable work throughout their shifts, including their unpaid "meal breaks."

23. Thus, AU Health uniformly deprives these employees of overtime wages for all hours worked in excess of 40 hours in a workweek in violation of the FLSA.

24. The Putative Class of similarly situated employees is defined as:

> **All hourly, non-exempt employees who worked for, or on behalf of, AU Health at any AU Health facility[1] who received a meal period deduction at any time during the past 3 years ("Putative Class Members" or "Putative Class").**

25. AU Health is a Georgia non-profit corporation that maintains its headquarters in Augusta, Georgia.

26. AU Health may be served with process by serving its registered agent: **Stewart Fisher, 1481 Laney Walker Boulevard, AD 1201, Augusta, Georgia 30912**, or wherever he may be found.

### COVERAGE UNDER THE FLSA

27. At all relevant times, AU Health was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

---

[1] *See* https://www.augustahealth.org/locations/ (identifying all AU Health locations).

28. At all relevant times, AU Health, as a hospital network and institution primarily engaged in healthcare, was an "enterprise" within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

29. At all relevant times, AU Health was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because AU Health, as a hospital network, is engaged in the operation of a hospital and is an institution primarily engaged in providing healthcare services.

30. At all relevant times, AU Health was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as computers, cellphones, medical tools, and personal protective equipment – that have been moved in or produced for commerce.

31. At all relevant times, AU Health has had an annual gross volume of sales made or business done of not less than $500,000 each year.

32. At all relevant times, Douglas and the Putative Class Members were AU Health's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

33. At all relevant times, Douglas and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

34. AU Health uniformly deducted 30 minutes per shift from Douglas's and the Putative Class Members' wages for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

35. As a result, AU Health failed to pay Douglas and the Putative Class Members for this compensable work, including overtime, in violation of the FLSA.

36. AU Health's automatic meal break deduction policy, which deprives Douglas and the Putative Class Members of overtime compensation for the weeks in which these workers work over 40 hours, violates the FLSA. 29 U.S.C. § 207(a) & (e).

## THE FACTS

37. AU Health bills itself as "a world-class health care network, offering the most comprehensive primary, specialty and subspecialty care in the region."[2]

38. AU Health owns and/or operates hospitals and healthcare facilities across Georgia and South Carolina.[3]

39. To meet its business objectives, AU Health employs patient care workers, including Douglas and the Putative Class Members, to work at the various healthcare facilities it owns and/or operates.

40. Indeed, AU Health owns and/or operates all the healthcare facilities where Douglas and the Putative Class Members work.

41. AU Health's facilities have common ownership and/or management.

42. Indeed, AU Health has a single, system-wide leadership/management team and a single, system-wide board of directors, regardless of facility.[4]

43. AU Health facilities also have a centralized human resources department and use a system-wide human resources management system.[5]

---

[2] https://www.augustahealth.org/about (last visited June 30, 2023).
[3] *See* https://www.augustahealth.org/locations/ (identifying all AU Health locations) (last visited June 30, 2023).
[4] *See* https://www.augustahealth.org/leadership/ (last visited June 30, 2023).
[5] *See* https://www.augusta.edu/hr/ ("Serving all human resource needs for … the AU Health System.") (last visited June 30, 2023); https://www.augusta.edu/oneusg/ (last visited June 30, 2023).

44. Likewise, AU Health facilities all use the same employee intranet, myAugusta.[6]

45. AU Health controls and dictates Douglas's and the Putative Class Members' rates and methods of pay, regardless of facility.

46. AU Health maintains control, oversight, and direction over Douglas and the Putative Class Members, including the promulgation and enforcement of policies affecting the payment of wages (including overtime compensation), meal breaks, timekeeping, performance standards, and other employment policies.

47. AU Health maintains control, oversight, and direction of Douglas and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, and other employment practices.

48. Indeed, AU Health dictates the uniform hiring standards and all other employment policies and practices in place at its various healthcare facilities where Douglas and the Putative Class Members work.

49. AU Health has the authority to hire, fire, and discipline the employees working at its various healthcare facilities, including Douglas and the Putative Class Members.

50. AU Health controls Douglas's and the Putative Class Members' schedules and assignments.

51. AU Health controls Douglas's and the Putative Class Members' work.

52. AU Health requires Douglas and the Putative Class Members to follow AU Health's uniform and system-wide policies, procedures, and specifications, regardless of facility.

---

[6] *See* https://my.augusta.edu/?homepage=4 (last visited June 30, 2023).

53. Douglas's and the Putative Class Members' work must strictly adhere to the uniform quality standards put in place by AU Health, regardless of facility.

54. AU Health prohibits Douglas and the Putative Class Members from varying their job duties outside AU Health's uniform guidelines and expectations and requires Douglas and the Putative Class Members to follow AU Health's system-wide policies, procedures, and directives.

55. Without the patient care work Douglas and the Putative Class Members perform, AU Health would not be able to complete its business objectives of operating healthcare facilities across Georgia and South Carolina.

56. Douglas and the Putative Class Members rely on AU Health for work and compensation.

57. Douglas and the Putative Class Members do not substantially invest in the tools, materials, and equipment required to complete their patient care jobs.

58. Rather, AU Health incurs the large-scale business and operating expenses like payroll, marketing, healthcare facilities and hospitals, medical equipment and tools, etc. that the patient care employees working at its various healthcare facilities, including Douglas and the Putative Class Members, need to perform their patient care jobs.

59. AU Health sets Douglas's and the Putative Class Members' work schedule, which necessarily prohibits them from working other jobs while working for AU Health.

60. AU Health maintains employment records for the patient care employees working at its various healthcare facilities, including Douglas and the Putative Class Members.

61. In sum, the patient care employees that work in AU Health's various healthcare facilities, including Douglas and the Putative Class Members, are AU Health's employees.

62. AU Health uniformly classifies the patient care employees working at its various healthcare facilities, including Douglas and the Putative Class Members, as non-exempt and pays them on an hourly basis.

63. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

64. For example, Douglas worked for AU Health as a PCT at AU Health's facility in Augusta, Georgia from approximately January 2022 until April 2022.

65. As a PCT, Douglas's primary responsibilities included providing patient care to the patients at AU Health, such as monitoring patients, checking vital signs, performing preliminary diagnostics, charting treatments, bathing patients, cleaning patients' rooms, and generally assisting doctors and other nursing staff.

66. Throughout her employment, AU Health classified Douglas as non-exempt and paid her on an hourly basis.

67. Throughout her employment, AU Health subjected Douglas to its common practice of automatically deducting 30 minutes from her recorded hours worked and wages each shift for meal breaks, regardless of whether she actually received a *bona fide* meal break.

68. But throughout her employment, Douglas did not actually receive full, uninterrupted, *bona fide* meal breaks.

69. Douglas and the Putative Class Members perform their jobs under AU Health's supervision and use materials, equipment, and technology approved and supplied by AU Health.

70. AU Health requires Douglas and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

71. At the end of each pay period, Douglas and the Putative Class Members receive wages from AU Health that are determined by common systems and methods that AU Health selects and controls.

72. AU Health requires its hourly, non-exempt patient care employees, including Douglas and the Putative Class Members, to record their hours worked using AU Health's timeclock system.

73. Further, AU Health subjects its hourly, non-exempt patient care employees, including Douglas and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

74. Specifically, AU Health automatically deducts 30 minutes per shift from Douglas's and the Putative Class Members' work time and wages for "meal breaks."

75. AU Health automatically deducts this time regardless of whether Douglas and the Putative Class Members actually receive a full, uninterrupted, 30-minute meal period.

76. Indeed, AU Health simply assumes Douglas and the Putative Class Members receive *bona fide* meal breaks each shift they work.

77. But AU Health fails to provide Douglas and the Putative Class Members with *bona fide* meal periods.

78. And Douglas and the Putative Class Members do not actually receive *bona fide* meal breaks.

79. Instead, AU Health requires Douglas and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts.

80. And AU Health continuously subjects Douglas and the Putative Class Members to work interruptions during their unpaid meal breaks.

81. Indeed, because of these constant work interruptions, Douglas and the Putative Class Members are not free to engage in personal activities during their unpaid meal breaks.

82. Rather, during their unpaid "meal breaks," Douglas and the Putative Class Members are necessarily forced to substantially perform their regular patient care job duties and responsibilities.

83. Thus, Douglas and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for AU Health's – not these employees' – predominant benefit.

84. This unpaid time is compensable under the FLSA because AU Health knew, or should have known, that (1) Douglas and the Putative Class Members were performing unpaid work during their meal breaks, (2) they were interrupted or subject to interruptions with work duties during any attempted meal break, (3) they were not completely relieved of all duties during their meal breaks, (4) they entirely skipped the meal break due to work demands, (5) the meal break was less than 30 consecutive minutes, (6) they were not free to engage in personal activities during their meal breaks because of constant work interruptions, (7) they remained on AU Health's premises during their unpaid meal break, and/or (8) they spent their unpaid meal breaks substantially performing their regular patient care duties for AU Health's predominant benefit.

85. AU Health failed to exercise its duty as Douglas's and the Putative Class Members' employer to ensure these patient care employees were not performing work that AU Health did not want performed during their unpaid "meal breaks."

86. AU Health knows Douglas and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because AU Health expects and requires these employees to do so.

87. And AU Health knew Douglas and the Putative Class Members regularly performed their regular patient care job duties for AU Health predominant benefit during their unpaid "meal breaks."

88. Indeed, Douglas and the Putative Class Members repeatedly complaints to AU Health management and their supervisors about being forced to work during their unpaid "meal breaks."

- 10 -

89. Despite accepting the benefits, AU Health did not pay Douglas and the Putative Class Members for the compensable work they performed during their "meal breaks."

90. Thus, under AU Health's uniform automatic meal break deduction policy, Douglas and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" during workweeks in which they worked in excess of 40 hours in violation of the FLSA.

91. Douglas worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

92. Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

93. Indeed, AU Health typically schedules Douglas and the Putative Class Members to work 12-hour shifts for 3 to 4 days a week.

94. And Douglas and the Putative Class Members regularly are also required to work during their unpaid meal breaks "off the clock" to complete their job duties and patient care responsibilities.

95. As a result, Douglas and the Putative Class Members work in excess of 40 hours in a typical workweek.

96. When Douglas and the Putative Class Members work more than 40 hours in a workweek, AU Health does not pay them overtime wages for all overtime hours worked due to AU Health's failure to include time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek in willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

97. Douglas realleges and incorporates all other paragraphs by reference.

98. Douglas brings her claims as a collective action under Section 216(b) of the FLSA.

99. The Putative Class Members were victimized by AU Health's pattern, practice, and/or policy of automatically deducting time from employees' recorded hours worked and wages for "meal breaks" that are not *bona fide*, which is in willful violation of the FLSA.

100. Other Putative Class Members worked with Douglas and indicated they were paid in the same manner, performed similar work, and were subject to AU Health's same automatic meal break deduction policy.

101. Based on her experiences with AU Health, Douglas is aware AU Health's illegal practices were imposed on the Putative Class Members.

102. The Putative Class Members are similarly situated in all relevant respects.

103. Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

104. Therefore, the specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

105. Rather, the Putative Class is held together by AU Health's uniform automatic meal break deduction policy that systematically deprived Douglas and the Putative Class Members of overtime pay for all overtime hours worked in violation of the FLSA.

106. The Putative Class Members are similarly denied overtime when they work more than 40 hours per week.

107. The back wages AU Health owes Douglas and the Putative Class Members will be calculated using the same records and the same formula.

108. Douglas's experiences are therefore typical of the experiences of the Putative Class Members.

109. Douglas has no interest contrary to, or in conflict with, the Putative Class Members that would prevent collective treatment.

110. Like each Putative Class Member, Douglas has an interest in obtaining the unpaid overtime wages owed under federal law.

111. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

112. Absent a collective action, many Putative Class Members will not obtain redress for their injuries, and AU Health will reap the unjust benefits of violating the FLSA.

113. Further, even if some of the Putative Class Members could afford individual litigation against AU Health, it would be unduly burdensome to the judicial system.

114. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

115. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

116. Among the common questions of law and fact are:

   a. Whether AU Health engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

   b. Whether AU Health's automatic meal break deduction policy deprived Douglas and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

   c. Whether AU Health knew, or had reason to know, Douglas and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of the FLSA;

   d. Whether AU Health failed to pay Douglas and the Putative Class Members overtime wages for all hours worked in excess of 40 hours in a workweek, including hours worked during missed and interrupted meal breaks, in violation of the FLSA;

   e. Whether AU Health's decision to not pay Douglas and the Putative Class Members overtime compensation for all overtime hours worked was made in good faith; and

   f. Whether AU Health's violations of the FLSA were willful.

117. Douglas and the Putative Class Members sustained damages arising out of AU Health's illegal and uniform employment policy.

118. Douglas knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

119. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to AU Health's records, and there is no detraction from the common nucleus of liability facts.

120. Therefore, the issue of damages does not preclude collective treatment.

121. AU Health is liable under the FLSA for failing to pay Douglas and the Putative Class Members overtime wages for all overtime hours worked.

122. Consistent with AU Health's illegal automatic meal break deduction policy, Douglas and the Putative Class Members were not paid overtime wages for all hours they worked in excess of 40 hours in a workweek.

123. As part of its regular business practices, AU Health intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Douglas and the Putative Class Members.

Case 1:23-cv-00091-JRH-BKE   Document 1   Filed 07/05/23   Page 15 of 20

124. AU Health's illegal automatic meal break deduction policy deprived Douglas and the Putative Class Members of the premium overtime wages they are owed under federal law.

125. There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

126. This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

127. Those similarly situated employees are known to AU Health, are readily identifiable, and can be located through AU Health's business and personnel records.

### AU HEALTH'S FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD FOR THE FLSA

128. Douglas realleges and incorporates all other paragraphs by reference.

129. AU Health knew the patient care employees working in the various healthcare facilities it owns and/or operates across Georgia and South Carolina, including Douglas and the Putative Class Members, were its employees.

130. AU Health knew Douglas and the Putative Class Members were non-exempt employees entitled to overtime wages because AU Health uniformly classified and paid them as such.

131. AU Health knew Douglas and the Putative Class Members were its hourly employees because it uniformly paid them on an hourly basis.

132. AU Health knew Douglas and the Putative Class Members worked more than 40 hours in a workweek because AU Health tracked these patient care employees' hours worked through its uniform timekeeping system.

133. AU Health knew it was subject to the FLSA, including its overtime provisions.

- 15 -

134. AU Health knew the FLSA required it to pay non-exempt employees, including Douglas and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

135. AU Health knew the FLSA required it to pay Douglas and the Putative Class Members for all hours these patient care employees performed compensable work.

136. AU Health knew it automatically deducted 30 minutes a day from Douglas's and the Putative Class Members' work time and wages for "meal breaks."

137. AU Health knew it automatically deducted 30 minutes a day from Douglas's and the Putative Class Members' work time and wages for "meal breaks" regardless of whether these employees actually received *bona fide* meal breaks.

138. AU Health knew Douglas and the Putative Class Members did not actually receive *bona fide* meal breaks.

139. AU Health knew Douglas and the Putative Class Members regularly worked during their unpaid meal breaks because AU Health expected and required them to do so.

140. AU Health knew Douglas and the Putative Class Members regularly spent their unpaid meal breaks substantially performing their regular patient care job duties for AU Health's predominant benefit.

141. Indeed, Douglas and the Putative Class Members routinely complained to AU Health's management, HR, and their supervisors about being forced to work during their unpaid "meal breaks."

142. AU Health knew that, as Douglas's and the Putative Class Members' employer, it had a duty to ensure these employees were not performing work that AU Health did not want performed during their unpaid "meal breaks."

143. AU Health knew Douglas and the Putative Class Members performed compensable work during their unpaid meal breaks.

144. Nonetheless, AU Health failed to pay Douglas and the Putative Class Members for the compensable work they performed during their unpaid "meal breaks."

145. Thus, AU Health knew, should have known, or recklessly disregarded the fact that it did not pay Douglas and the Putative Class Members for all hours these patient care employees performed compensable work, including the compensable work they performed during their unpaid meal breaks.

146. In other words, AU Health knew, should have known, or recklessly disregarded the fact that it failed to pay Douglas and the Putative Class Members overtime wages for all overtime hours worked, including hours worked during their unpaid meal breaks, in violation of the FLSA.

147. AU Health's failure to pay Douglas and the Putative Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation for all overtime hours worked made in good faith.

148. AU Health's failure to pay Douglas and the Putative Class Members overtime compensation for all overtime hours worked was not the result of a *bona fide* dispute.

149. AU Health knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Douglas and the Putative Class Members of overtime wages for all overtime hours worked in willful violation of the FLSA.

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME UNDER THE FLSA

150. Douglas realleges and incorporates all other paragraphs by reference.

151. Douglas brings her FLSA claim as a collective action on behalf of herself and the Putative Class Members pursuant to 29 U.S.C. § 216(b).

152. AU Health violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing non-exempt employees (Douglas and the Putative Class Members) in an enterprise engaged

in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times the regular rates of pay for all the hours they worked in excess of 40 hours in a workweek, including hours worked "off the clock" during these employees' unpaid meal breaks.

153. Douglas and the Putative Class Members have been harmed as a direct and proximate result of AU Health's unlawful conduct because they have been deprived of wages owed for work that they performed and from which AU Health derived a direct and substantial benefit.

154. AU Health knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to timely pay Douglas and the Putative Class Members overtime wages for all overtime hours worked.

155. AU Health's failure to pay Douglas and the Putative Class Members overtime wages for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

156. Accordingly, Douglas and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

### JURY DEMAND

157. Douglas demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Douglas, individually and on behalf of the Putative Class Members, seeks the following relief:

    a.    An Order designating this action as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in

this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.  An Order pursuant to Section 16(b) of the FLSA finding AU Health liable for unpaid back wages due to Douglas and the Putative Class Members, plus liquidated damages in an amount equal to their unpaid compensation;

c.  Judgment awarding Douglas and the Putative Class Members all unpaid overtime and other damages available under the FLSA;

d.  An Order awarding attorney's fees, costs, and expenses;

e.  Pre- and post-judgment interest at the highest applicable rates; and

f.  Such other and further relief as may be necessary and appropriate.

Dated: June 30, 2023

Respectfully submitted,

**TROY A. LANIER, PC**

By: /s/ *Troy A. Lanier*
Troy A. Lanier
GA Bar No. 437775
430 Ellis Street
Augusta, Georgia 30901
706-823-6800 – Telephone
tlanier@tlanierlaw.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

William C. (Clif) Alexander*
Austin W. Anderson*
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Facsimile
clif@a2xlaw.com
austin@a2xlaw.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF
& PUTATIVE CLASS MEMBERS**